# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FORCEL MEDIA LIMITED, | ) | |
| | ) | |
| | ) | 2:25-cv-750 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DecYI, *et al.*, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM ORDER</u>

Pending before the Court is Plaintiff Forcel Media Limited's Motion for Temporary Restraining Order (ECF 7). Forcel seeks an *ex parte* TRO against 103 Defendants (foreign sellers) identified on Schedule A of the motion, averring that Defendants are infringing six of its registered trademarks. The requested TRO enjoins Defendants from unauthorized use of Forcel's trademarks, orders third-party online marketplace platforms to freeze assets in financial accounts connected to Defendants' infringing activities, and orders expedited discovery. For the reasons below, the Court denies Forcel's motion.

"Preliminary injunctive relief is an extraordinary remedy and should be granted only in limited circumstances." *Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004) (cleaned up). "A party seeking a [TRO] must show: (1) a likelihood of success on the merits; (2) that it will suffer irreparable harm if the [TRO] is denied; (3) that granting preliminary relief will not result in even greater harm to the nonmoving party; and (4) that the public interest favors such relief." *Id.* In

finding that Forcel has not satisfied its burden for obtaining preliminary injunctive relief, the Court focuses on the three factors below.

**Likelihood of success on the merits**.  There are at least two serious procedural obstacles in this case, which undercut Forcel's ability to demonstrate a likelihood of success on the merits.  The first is personal jurisdiction.

While Forcel alleges in the complaint that upon information and belief Defendants sell and ship infringing products to the United States, including Pennsylvania (ECF 1, ¶ 10), the Court has serious concerns about the existence of personal jurisdiction over Defendants.

Specific personal jurisdiction may be exercised over defendants only if "(1) the defendants purposefully directed their activities at the forum; (2) the action arises out of or relates to those activities; and (3) the exercise of jurisdiction otherwise comports with fair play and substantial justice."  *Williams v. Elliott*, No. 18-5418, 2020 WL 470308, at *4 (E.D. Pa. Jan. 29, 2020); *see also Xie v. GUANHE Home essentials,* No. 25-265, 2025 WL 1039233, at *2 (W.D. Pa. Apr. 8, 2025) (Hornak, C.J.) (at preliminary-injunction stage, plaintiff must establish a "reasonable probability" that it "will be able to establish personal jurisdiction by a preponderance of the evidence").

Forcel argues that the Court has personal jurisdiction over Defendants because they target business activities towards Pennsylvania consumers by setting up and operating e-commerce stores through which Pennsylvania residents can purchase the allegedly infringing products.  ECF 8, p. 9.  Even accepting as true these allegations, simply operating a store on a national e-commerce website is not enough to establish purposeful availment of the forum.  *See Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 454 (3d Cir. 2003) ("[T]he mere operation of a commercially interactive web site should not subject the operator to jurisdiction anywhere in the world."); *Flipside Wallets LLC v. Brafman Grp. Inc.,* No. 19-5356, 2020 WL 1330742, at *3 (E.D. Pa.

Mar. 19, 2020) ("While businesses like [plaintiff's] surely benefit from the nationwide market reach of Amazon, [plaintiff's] use of a third-party website to facilitate sales does not satisfy the 'purposeful availment' standard as required by *Toys "R" Us*.").

Perhaps acknowledging this, the complaint includes screenshots showing that Defendants' infringing products are deliverable to Pennsylvania addresses, and Forcel claims that whether Defendants actually physically shipped infringing products into Pennsylvania is not determinate of whether personal jurisdiction exists. ECF 8, p. 10. The Court disagrees.

Without a showing that sales and shipments of Defendants' infringing products at issue here were made to Pennsylvania, the Court would not be satisfied that personal jurisdiction exists. *See Zhang v. AAGGO*, No. 25-85, 2025 WL 1158909, at *3 (W.D. Pa. Apr. 21, 2025) (Stickman, J.) ("While courts in this circuit have not coalesced around a consensus view, the Court concurs with its sister courts finding that personal jurisdiction will not attach *absent any evidence of actual sales* to the forum state." (emphasis original)); *Guidecraft, Inc. v. OJCommerce, LLC*, No. 18-1247, 2019 WL 2373440, at *5 (W.D. Pa. May 20, 2019) (Lenihan, M.J.) (rejecting personal jurisdiction premised solely on commercially interactive nature of defendants' website and use of its Amazon site to sell goods to consumers throughout the country, including Pennsylvania).

Moreover, the screenshots attached to the complaint do not reflect that these are arms-length sales. If Forcel or its counsel or agents simply ordered these products to create personal jurisdiction, that doesn't work. *See Nifty Home Prods. Inc. v. Ladynana US*, No. 23-1332, 2024 WL 4987245, at *3 (3d Cir. Dec. 5, 2024) (finding, in context of review of district court's denying motion to vacate default judgment, a "colorable argument" that single sale from each defendant into Pennsylvania—set up by plaintiff in each instance—was insufficient to show purposeful availment); *Toys "R" Us, Inc.*, 318 F.3d 446 at 454-55 (two sales orchestrated by the plaintiff

insufficient to establish personal jurisdiction because these two sales "appear to be the kind of 'fortuitous,' 'random,' and 'attenuated' contacts that the Supreme Court has held insufficient to warrant the exercise of jurisdiction"); *Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085, 1095 (9th Cir. 2023) (finding personal jurisdiction over defendants using their Amazon storefronts to make sales to residents in forum state, but requiring that such sales "must occur in the defendant's regular course of business").

Finally, Forcel hasn't demonstrated that it is reasonably likely that Defendants would be subject to the Court's jurisdiction under Rule 4(k)(2), which establishes personal jurisdiction where a defendant is not subject to personal jurisdiction in any one state but has sufficient minimum contacts with the United States as a whole. *See Xie,* 2025 WL 1039233, at *5-6.

The second serious problem for Forcel is misjoinder. The Court questions the propriety of joinder of 103 defendants under Rule 20. Rule 20(a)(2) allows a plaintiff "to join all defendant sellers in one action if the claims arise out of the same transaction, occurrence, or series of transactions or occurrences." *Viking Arm AS v. P'hips & Unincorporated Ass'ns Identified on Schedule A*, No. 24-1566, 2024 WL 2953105, at *1 (N.D. Ill. June 6, 2024). Under Rule 21, the Court "may at any time, on just terms, add or drop a party." Fed. R. Civ. P. 21.

As courts in the Northern District of Illinois have "time and again" held in the context of similar Schedule A cases, "it is not enough for a plaintiff to simply allege that multiple defendants have infringed the same patent or trademark to meet Rule 20's requirements." *Estee Lauder Cosms. Ltd. v. P'ships & Unincorporated Ass'ns Identified on Schedule A*, 334 F.R.D. 182, 187 (N.D. Ill. 2020). This is because, absent some sort of connection among the defendants, "one defendant's alleged infringement

does not arise out of the same transaction, occurrence, or series of transactions of occurrences as another defendant's unrelated infringement." *Id.*

Forcel claims that Defendants are properly joined because: (1) Defendants often operate under multiple fictious aliases and/or appear to be an interrelated group of infringers, (2) Defendants' internet stores share same or similar registration patterns, accepted payment methods, check-out methods, prices and quantities, keywords, stock images, infringing product descriptions, (3) Defendants' infringing products bear similar irregularities that suggest they came from a common source, (4) infringers typically communicate with each other through group chats and websites to discuss tactics for operating multiple accounts and evading detection, and (5) infringers commonly operate under multiple seller aliases to evade enforcement efforts and conceal their identities. ECF 1, ¶¶ 46-55.

These are conclusory assertions unsupported by sufficient facts, and do not convince the Court that there is a connection among Defendants—certainly not *all* 103 Defendants. "[I]t's not enough to suggest that sometimes there are things that link some of the defendants together." *Toyota Motor Sales, U.S.A., Inc. v. P'ships and Unincorporated Ass'ns Identified on Schedule A*, 24-cv-9401, ECF 27 at 3 (N.D. Ill. Nov. 18, 2024). Indeed, these are arguments that courts in the Northern District of Illinois have routinely rejected. *See, e.g.*, *id.*, ECF 27 at 1-2 (rejecting argument that counterfeiters coordinate actions to evade detection and liability, some counterfeiters use the same wording in product descriptions, and some seller aliases may have common ownership); *Xie v. The Entities and Individuals Identified in Annex A*, 24-cv-09791, ECF 14 (N.D. Ill. Nov. 12, 2024) (rejecting argument that defendants receive the infringing products from the same manufacturer, use the same advertising and images, offer for sale the same infringing products, and have other shared commonalities, such as price, payment accounts, grammar, title, and descriptions); *Mercis B.V. v. The Individuals, Corps., Ltd. Liab. Cos., P'ships, And Unincorporated*

- 5 -

*Ass'ns Identified On Schedule A Hereto*, 24-cv-11936, ECF 23 at 2 (N.D. Ill. Jan. 10, 2025) (rejecting argument that defendants' internet stores share design elements similar infringing products, some seller aliases may have common ownership, and some infringers coordinate actions to evade detection and liability); *NFL Props. LLC v. P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, No. 21-05522, 2021 WL 4963600, at *2 (N.D. Ill. Oct. 26, 2021) (rejecting argument that defendants have notable common features, such as "use of the same registration patterns, accepted payment methods, check-out methods, keywords, advertising tactics, similarities in price and quantities, the same incorrect grammar and misspellings, and/or the use of the same text and images" (cleaned up)).

Forcel does not allege that each Defendant unlawfully infringed all six of its trademarks—nor is this a plausible inference given the wide range of products at issue, from car spray to cosmetics. *See NFL Props. LLC*, 2021 WL 4963600, at *3; *Estee Lauder Cosms. Ltd*, 334 F.R.D. at 188 n.5. The Court also cannot infer from the 441 pages of screenshots attached to the complaint as an exhibit that there is a relationship among all 103 Defendants, *e.g.*, that the seller aliases are owned by a common entity or that there is coordination among Defendants. *See Bailie v. P'ships & Unincorporated Ass'ns Identified on Schedule A*, 734 F. Supp. 3d 798, 805 (N.D. Ill. 2024) ("[E]ven if defendants' webpages were all identical, joinder is improper because use of identical web pages would not overcome the likelihood that Defendants are just copycats, both of the plaintiff's style and of each other." (cleaned up)); *Viking Arm AS*, 2024 WL 2953105, at *3 ("At most, Plaintiff has identified a small subset of the 181 defendants who are copycats of Plaintiff's style and each other, but that does not make them *all* partners in collusion." (emphasis original)); *Dongguan Juyuan Precision Tech. Co., Ltd. v. The P'ship and Unincorporated Ass's Identified on Schedule A*, No. 24-cv-11301, ECF 5 at 1 (N.D. Ill. Nov. 4, 2024) ("[E]xperience has shown that, while some individual defendants may operate several online stores, and

while some individual defendants may coordinate with other defendants before or after the filing of the infringement action, rarely, if ever, have all defendants named in a Schedule A case worked together.").

"[E]ven where joinder is permissible under Rule 20, a Court may exercise its discretion to sever or drop defendants if it concludes that doing so would further the interests of judicial economy without prejudice to any party." *Malibu Media, LLC v. Surgent*, No. 12-3905, 2013 WL 1704289, at *2 (D.N.J. Apr. 19, 2013). So regardless of the propriety of joinder under Rule 20, allowing joinder in this case would undermine judicial economy, is not in the interest of justice, and hampers the Court's ability to conduct meaningful review of the merits of the case—especially in the setting of an *ex parte* TRO involving 103 (seemingly unrelated) Defendants. *See Bailie*, 734 F. Supp. 3d at 804-05 ("In view of the reality that Schedule A plaintiffs typically request thousands of dollars in statutory damages, the increased costs to plaintiffs do not, on this record, justify the serious prejudice to defendants that occurs when a meaningful *ex parte* review of hundreds or thousands of pages of screenshots and intellectual property specimens becomes effectively impossible.").

**Irreparable Harm & Balance of Harms**. The Court addresses these two elements together because they are related in this case.

"[T]here is no presumption of irreparable harm afforded to parties seeking injunctive relief in Lanham Act cases." *Fu v. Allriver-Direct*, No. 25-615, 2025 WL 1554002, at *6 (W.D. Pa. June 2, 2025) (Stickman, J.) (cleaned up). Forcel first claims that the harm to its reputation and goodwill and the possible diversion of customers due to loss in brand confidence are irreparable. ECF 8, p. 17. "[T]he harm necessarily caused to reputation and goodwill is irreparable because it is virtually impossible to

quantify in terms of monetary damages." *Ferring Pharms., Inc. v. Watson Pharms., Inc.*, 765 F.3d 205, 211 (3d Cir. 2014).

The Court notes that, while Forcel cites to a declaration by its Director, Lai Ka Fat, to purportedly demonstrate that Defendants' unauthorized use of its trademarks has damaged its reputation and goodwill and will result in loss of future sales, there is not much showing of *how* there is a loss of goodwill or customers as a result of Defendants' infringement—no citation, for example, to online reviews or customer declarations. *See Roadget Bus. Pte. Ltd. v. Individuals, Corps., Ltd. Liab. Companies, P'ships, & Unincorporated Ass'ns Identified on Schedule A*, No. 24-21516, 2024 WL 4881238, at *6 (S.D. Fla. Oct. 7, 2024) (no showing of irreparable harm and no evidence indicating loss of goodwill); *Fu*, 2025 WL 1554002, at *6 (insufficient showing of irreparable harm where plaintiff speculated on injury to reputation and did not give any case-specific examples of irreparable harm); *Ontel Prods. Corp. v. Brownstone Res., LLC*, No. 21-1359, 2021 WL 6103538, at *6 (C.D. Cal. Aug. 20, 2021) (same); *Atari Interactive, Inc. v. Printify, Inc.*, 714 F. Supp. 3d 225, 238 (S.D.N.Y. 2024) (no evidence that the "actual infringing goods are inferior in quality relative to [plaintiff's] products" or that "any consumer has been confused as to the origin of his or her purchases").

Also problematic is that the requested TRO not only enjoins Defendants from using Forcel's trademarks, but also directs the online marketplace platforms to freeze all accounts connected to Defendants' seller aliases. This relief would greatly interfere with Defendants' business operations and is far too broad, particularly given the number of Defendants in this case and the lack of information about the proportion of non-infringing sales to infringing sales as to each Defendant. *See Neal v. Operators of Digital Props. Set Forth in Exhibit 1*, No. 24-263, 2024 WL 4891528, at *5 (N.D. Ind. Nov. 26, 2024) ("Due to the many unknowns of this case, including the Defendants' identities, the size of the Defendants' companies, and the scale of

non-infringing sales versus infringing sales, this Court cannot accurately balance the competing interests to determine whether harm to the Defendant outweighs harm to the Plaintiff."); *Juul Labs, Inc. v. 4X PODS.*, 439 F. Supp. 3d 341, 359 (D.N.J. 2020) (noting the "disconnect" between the remedy plaintiff sought—freezing all assets in defendants' bank accounts—and the relief requested in the complaint, disgorgement of profits from the offending products).

Additionally, demonstrating irreparable harm with respect to a TRO to freeze assets requires a showing by the plaintiff that it is "likely to become entitled to the encumbered funds upon final judgment and a showing that without the [preliminary injunctive relief], [it] will probably be unable to recover those funds." *Juul Labs, Inc.*, 439 F. Supp. 3d at 358 (cleaned up). While Forcel claims that, without an *ex parte* TRO that freezes Defendants' assets, Defendants are likely to move assets into offshore accounts outside of the Court's jurisdiction, there isn't a sufficient basis to support its "all-encompassing claim that all of the listed defendants are…similarly situated in the context of possible asset transfers." *Tang v. Individuals, P'ships & Unincorporated Ass'ns Identified on Schedule A*, No. 21-14431, 2022 WL 1664116, at *3 (S.D. Fla. Feb. 28, 2022) (finding, in light of the "extreme breadth and severity of the proposed asset freeze—combined with the speculative and generalized nature of the showing of alleged irreparable injury—Plaintiff has not met its burden" for a preliminary injunction ordering asset freeze); *see also Juul Labs, Inc.*, 439 F. Supp. 3d at 360 (denying request for preliminary asset freeze due to "evidentiary gap" between the claimed profits and the alleged infringement). "[C]onclusory statements regarding the propensity of counterfeiters in general to engage in evasive tactics is insufficient to meet Rule 65(b)(1)'s stringent standard." *Zuru (Singapore) PTE, Ltd.*

*v. Individuals, Corps., Ltd. Liab. Cos., P'ships, & Unincorporated Ass'ns Identified on Schedule A*, No. 20-395, 2021 WL 310336, at *4 (D. Haw. Jan. 29, 2021) (cleaned up).

******

Accordingly, for the foregoing reasons, the Court hereby **DENIES** the *Ex Parte* Motion for Temporary Restraining Order (ECF 7). Because the Court denies the request for a prejudgment asset freeze, the request for expedited discovery of Defendants' financial accounts and account users is also denied. The Court declines to issue an order to show cause why a preliminary injunction should not issue. Further, Forcel is ordered to show cause as to why the case should not be severed for misjoinder by June 24, 2025; alternatively, by the same date, Forcel may file an amended complaint curing the joinder issues raised in this order and further bolstering any allegations regarding personal jurisdiction as to the defendants that remain in the amended complaint. The motion for leave to serve process through electronic means (ECF 11) is denied without prejudice. The motion to seal (ECF 14) is provisionally granted: the pleadings filed on docket, to date, shall be sealed until further order of Court. This order shall remain unsealed.

Dated: June 12, 2025

BY THE COURT:

/s/ J. Nicholas Ranjan
United States District Judge